**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01377-WJM-CBS

GLEN PELLETIER,

     Plaintiff,

v.

UNITED STATES OF AMERICA,

     Defendant.

---

**ORDER DENYING PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER**

---

Before the Court is Plaintiff's Emergency Motion for Temporary Restraining

Order.  (ECF No. 2.)  The Court held a hearing on Plaintiff's Motion on May 25, 2011.

(ECF No. 4.)  For the reasons set forth below, the Court hereby DENIES the Motion.

## I.  JURISDICTION

The Court preliminarily finds that it has jurisdiction over this case based on a

federal question.  28 U.S.C. § 1331.  Plaintiff has alleged that the United States

Department of Homeland Security's ("DHS") policy of not issuing certain immigration

documents to Canadian citizens violates his equal protection rights under the

Fourteenth Amendment.  The Court finds that it has jurisdiction over this constitutional

issue for the purposes of ruling on Plaintiff's Motion for Temporary Restraining Order.

## II.  FACTUAL BACKGROUND

Plaintiff Glen Pelletier is a Canadian citizen that has traveled frequently between the United States and Canada for most of his adult life.  He is married to an American citizen and is the step-father of an American citizen.  (Compl. (ECF No. 1) ¶ 19.)

In August 2008, DHS commenced removal proceedings pursuant to Section 240 of the Immigration and Nationality Act against Plaintiff by filing an I-265 in Utah Immigration Court.  (ECF No. 1-1 at 6-8.)  The I-265 alleged that Plaintiff arrived in the United States on or about January 2, 1996; that he is an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act; that he was unlawfully present in the United States for an aggregate period of more than one year (from January 2, 1996 to August 29, 2008); that he last departed from the United States on January 2, 1996; that he entered the United States without being admitted on or after January 2, 1996.  (*Id*.)

On Plaintiff's Motion, the Immigration Court transferred his case from Utah to Colorado.  (Compl. ¶ 35.)  A Master Calendar Hearing was set in Colorado Immigration Court for May 25, 2011.

In October 2010, Plaintiff filed a Freedom of Information Act ("FOIA") request for any documents in DHS's possession regarding his entries and/or exits from the United States.  (ECF No. 1-1 at 24.)  On April 28, 2011, because he had not received a response to his FOIA request, Plaintiff filed a Motion for Continuance of the May 25,

2

2011 hearing.  (ECF No. 1-1 at 21-22.)  On May 10, 2011, the Immigration Judge

denied Plaintiff's request for a continuance.  Plaintiff received the requested documents

on May 23, 2011.  (ECF No. 1-1 at 18-30.)

On May 24, 2011, Plaintiff filed the above-captioned action in this Court.  (ECF

No. 1.)  He contemporaneously filed the instant Emergency Motion for Temporary

Restraining Order asking the Court to enjoin the immigration court from conducting the

May 25, 2011 Master Calendar Hearing.  (ECF No. 2.)

### III.   LEGAL STANDARD

To prevail on a motion for injunctive relief, the movant must establish that four

equitable factors weigh in his favor: (1) he is substantially likely to succeed on the

merits; (2) he will suffer irreparable injury if the injunction is denied; (3) his threatened

injury outweighs the injury the opposing party will suffer under the injunction; and (4) the

injunction would not be adverse to the public interest.  *See Westar Energy, Inc. v. Lake*,

552 F.3d 1215, 1224 (10th Cir. 2009).  "[B]ecause a preliminary injunction is an

extraordinary remedy, the right to relief must be clear and unequivocal."  *Greater*

*Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).  If the moving

party demonstrates that the second, third, and fourth factors "tip strongly in his favor,

the test is modified," and the moving party "may meet the requirement for showing

success on the merits by showing that questions going to the merits are so serious,

substantial, difficult, and doubtful as to make the issue for litigation and deserving of

more deliberate investigation."[1]  *Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).

## IV.   ANALYSIS

The moving party bears the burden of persuasion as to each of the four elements of injunctive relief.  *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003); *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).  The Court will examine each factor in turn below.

## A.   Irreparable Harm

"[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Heideman*, 348 F.3d at 1189 (quotations and citations omitted).  "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise."  *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1105 (10th Cir. 2003).  Harm that is merely "serious or substantial" is not irreparable.  *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

---

[1]  The Court notes that the continuing validity of this doctrine is questionable in light of *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365 (2008).  *See Predator Intern., Inc. v. Gamo Outdoor USA, Inc.*, 669 F. Supp. 2d 1235, 1243 (D. Colo. 2009) (noting that *Winter* may affect the viability of the relaxed standard for success on the merits).  However, since *Winter*, the Tenth Circuit has continued to refer to the relaxed standard.  *See RoDa Drilling Co. V. Siegal*, 552 F.3d 1203, 1209 n.3 (10th Cir. 2009).  Accordingly, the relaxed standard appears to continue to be binding law in this circuit.  *See San Luis Valley Ecosystem Council v. U.S. Fish and Wildlife Servs.*, 657 F. Supp. 2d 1233, 1239 n.1 (D. Colo. 2009) ("[T]he Tenth Circuit appears to recognize the continuing validity of the modified success-on-the-merits formula notwithstanding the *Winter* decision.").

At this point in this case, the Court has no evidence supporting Plaintiff's contention that the failure to award a temporary restraining order will result in irreparable harm.  Plaintiff's Complaint makes allegations of irreparable harm but is unverified and, as such, it cannot serve as the evidence on which the Court grants injunctive relief.  *See* 11A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2949 (2d ed. 1995) ("Evidence that goes beyond the unverified allegations of the pleadings and motion papers must be presented to support or oppose a motion for a preliminary injunction.").  Plaintiff was present in person at the hearing on the Motion and Plaintiff's counsel was offered the opportunity to call Plaintiff as a witness but declined to do so.

When asked what evidence Plaintiff was relying on in support of his Motion, Plaintiff's counsel responded that he intended to rely on the documents attached to the Complaint and Plaintiff's "Affidavit".[2]   Plaintiff's "Affidavit" is not notarized and does not state that it is signed under penalty of perjury.  Thus, it does not meet the requirements of 28 U.S.C. § 1746[3].

---

[2]  At the hearing, the Court denied Plaintiff's request to admit additional documents because Plaintiff's counsel made no attempt to authenticate the documents or establish a foundation for the documents.  Moreover, the stack of documents Plaintiff offered for admission had not been numbered or subdivided in any way.  It was simply a stack of records that Plaintiff's counsel contended would show that Plaintiff had traveled between the United States and Canada since 1996.

[3]  28 U.S.C. § 1746 provides:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement,

As such, the Court is left only with the documents attached to the Complaint. (ECF Nos. 1-1 and 1-2.)  These documents are largely illegible.  The best the Court can discern, the documents include: records from his ongoing immigration proceedings; a credit card statement showing some charges from New Brunswick, Canada; Plaintiff's Canadian driver's license and birth certificate; and U.S. Customs and Border Protection's response to Plaintiff's FOIA request.  The contents of these documents go principally to the issue of whether Plaintiff is likely to succeed on the merits.  Nothing in those documents establishes that Plaintiff is likely to suffer irreparable harm if the Court declines to issue a temporary restraining order.

---

oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> (1) If executed without the United States: "I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date).
>
> (Signature)".
>
> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
>
> (Signature)".

Moreover, at the hearing on the Motion, counsel for the Government represented that he had spoken with counsel for DHS and had been assured that Plaintiff would not be ordered removed at the May 25, 2011 hearing.  In fact, the Government represented its understanding that the May 25, 2011 immigration hearing was very preliminary in nature.  Plaintiff's counsel admitted at the hearing that his client was without any proof or evidence to the contrary.

"To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Scrier v. University of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005).  At the hearing, Plaintiff's counsel argued that it was *possible* that the immigration judge might make a finding at the May 25, 2011 hearing that Plaintiff had entered the country illegally.  If such finding occurred, Plaintiff *may* not be eligible to adjust his immigration status and/or *may* be subject to a higher burden in that he would be required to show by clear and convincing evidence that he had lawfully entered the United States.  Even taking Plaintiff's counsel's representations as true, the threat of harm to Plaintiff if the hearing proceeds is uncertain at best.  Plaintiff's counsel is simply speculating about what the immigration judge may or may not do at the May 25, 2011 hearing.  He has offered no evidence showing that there is a certain, great, actual, and not theoretical likelihood of irreparable harm.

"[A] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).  Plaintiff's failure to meet his

burden with respect to showing irreparable harm, in and of itself, is sufficient basis for

the Court to deny Plaintiff's request for injunctive relief.  *See Kearns v. Shukla*, 2008

WL 4186214, *3 (W.D. Okla. Sept. 5, 2008) (declining to address remaining three

factors when plaintiff failed to show that refusal to grant injunctive relief would result in

irreparable harm).

**B.    Likelihood of Success on the Merits**

Plaintiff alleges that the Government's practice of not issuing I-94 documents to

Canadian citizens upon their boarder crossings unfairly discriminates against Canadian

citizens in that the lack of records prejudices their ability to rebut charges of illegal entry

in subsequent immigration cases.

The Fourteenth Amendment to the United States Constitution declares that "[n]o

State shall . . . deny to any person within its jurisdiction the equal protection of the

laws."  The Equal Protection Clause "keeps governmental decision makers from

treating differently persons who are in all relevant respects alike."  *Nordlinger v. Hahn*,

505 U.S. 1, 10 (1992).  Laws that differentiate amongst individuals based on their

alienage are subject to strict scrutiny.  *Graham v. Richardson*, 403 U.S. 365, 371-72

(1971) ("Aliens as a class are a prime example of a 'discrete and insular' minority for

whom such heightened judicial solicitude is appropriate.").  Under strict scrutiny, the

government has the burden of proving that the disputed policy is "narrowly tailored" to

serve a "compelling governmental interests."  *Adarand Constructors, Inc. v. Peña*, 515

U.S. 200, 227 (1995).   However, governmental actions that do not implicate a suspect

class are subject only to the rational basis test.  *KT&G v. Attorney General of State of Oklahoma*, 535 F.3d 1114, 1137 (10th Cir. 2008).  Under the rational basis test, the disputed policy "need only be rationally related to a legitimate government purpose." *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Plaintiff has failed to offer any evidence supporting his claim that he is likely to succeed on the merits.  At the hearing, Plaintiff argued that there is a policy requiring the Government to issue an I-94 to every person that crosses the border, but that Government officials selectively enforce that policy and arbitrarily decline to issue such documents to Canadian citizens.  However, he has offered no evidence supporting this contention.

Moreover, on the record before the Court, it is unclear whether the lack of records of Plaintiff's border crossings is due to his alienage or due to geography.  As noted by Government counsel, there is no evidence that the lack of records for Plaintiff's border crossings is based on his Canadian alienage and not on the fact that he crossed at a border town with less stringent security measures.  As such, the record is insufficient to allow the Court to determine what level of scrutiny should apply in this case.  For obvious reasons, Plaintiff's likelihood of success in showing that a policy fails the strict scrutiny analysis is significantly different than if he is required to show that there is no rational basis for that policy.

On the record presently before the Court, the Court finds that Plaintiff has failed to show a likelihood of success on the merits.

**C.      Balance of Interests and the Public Interest**

The third prong requires that the possible harm to the Plaintiff if the injunction is not entered be balanced against the possible harm to the Defendant if the injunction is entered.  In a case which involves a government agency, this factor is often intertwined with fourth factor—the public interest consideration.  *See Baker v. School Board of Marion County*, 48 F. Supp. 380, 383 (M.D. Fla. 1980).  As such, the Court will consider the two factors together.

The Court finds that these factors do not weigh heavily in favor of either granting or denying the Motion.  Plaintiff has not offered any evidence showing that the failure to enjoin the May 25, 2011 hearing will result in significant harm to him.  He has offered only a number of plausible scenarios for what might occur at the May 25, 2011 hearing.  Many of these scenarios would not result in significant harm to the Plaintiff.  The Government has represented that the purpose of the May 25, 2011 hearing is only to inform the Plaintiff of the claims against him and allow him to admit or deny the claims.  Certainly there is the potential for harm in the longer term in that Plaintiff may be removed from the United States and separated from his wife and step-son.  However, there is no evidence that such removal is likely to occur at the May 25, 2011 hearing.  In fact, the Government made an affirmative representation[4] that Plaintiff's removal would

---

[4]  Counsel for the Government stated that he would attempt to obtain an affidavit from the Department of Homeland Security stating that Plaintiff would not be ordered to be removed at the May 25, 2011 hearing if the Court desired.  He represented that he was unable to obtain the affidavit in advance of the hearing on the instant Motion solely due to time constraints.

not be ordered at the May 25, 2011 hearing.

The Government (and the public) has an interest in speedy disposition of immigration cases and enjoining Plaintiff's immigration proceedings would interfere with that speedy disposition.

Plaintiff bears the burden of establishing that each of the four prongs weigh in favor of issuing injunctive relief.  Given the lack of evidence presented in this case, especially with respect to a non-theoretical harm, the Court finds that Plaintiff has failed to meet his burden.

## V.  CONCLUSION

There is no evidence in the attachments to the Complaint or otherwise before the Court regarding three of the four prongs of the test for injunctive relief: (1) irreparable injury absent injunctive relief; (2) whether injury to Plaintiff outweighs potential injury to the Government; and (3) public interest.  As such, on the record currently before the Court, Plaintiff has utterly failed to meet his burden of showing that injunctive relief is warranted.  Plaintiff's Motion for Temporary Restraining Order is therefore DENIED.

Dated this 25th day of May, 2011.

BY THE COURT:

William J. Martínez
United States District Judge

11