**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01377-WJM-CBS

GLEN PELLETIER,
CARRIE LYNN PELLETIER, and
HOBIE MATTHEW WITT,

       Plaintiffs,

v.

UNITED STATES OF AMERICA,
JOHN LONGSHORE, Field Director, Immigration and Customs Enforcement, Denver District,
IMMIGRATION AND CUSTOMS ENFORCEMENT, Denver District, and
STEVEN M. BRANCH, Field Office Director, Salt Lake City Field Office,

       Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

Plaintiffs Glen Pelletier, Carrie Lynn Pelletier, and Hobie Matthew Witt (collectively "Plaintiffs") bring claims under the United States Constitution and the Administrative Procedure Act ("APA") against Defendants United States of America, John Longshore, Immigration and Customs Enforcement ("ICE"), and Steven M. Branch (collectively "Defendants"). (Second Am. Compl. ("SAC") (ECF No. 75); ECF No. 110). Before the Court are Defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 117) and Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") (ECF No. 118). For the reasons set forth below, Defendants' Motion is granted and Plaintiffs' Motion is denied.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).  When the parties file cross-motions for summary judgment, "no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."  *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997).

## II.  FACTUAL BACKGROUND

Unless otherwise noted, the facts below are undisputed.

2

Plaintiff Glen Pelletier ("Pelletier") is a citizen of Canada.  He is married to Plaintiff Carrie Lynn Pelletier, a United States Citizen.  Plaintiff Hobie Matthew Witt, also a United States Citizen, is his stepson.  (SAC ¶ 1.)  Pelletier has been lawfully admitted to the United States as a B-2 visitor numerous times, and he alleges that his most recent lawful admission occurred in June 2006.  (*Id*. ¶¶ 18, 22, 32.)  Pelletier was not issued a Form I-94 Arrival-Departure Record at that time, and did not observe the admitting officer creating any record of his inspection or admission.  (*Id*. ¶¶ 25, 29.)

Pelletier was apprehended and detained by the United States Government on August 28, 2008.  (*Id*. ¶ 35.)  The following day, he was issued a Form I-213 and Form I-862 Notice to Appear charging him as removable based on his entry without inspection.  (*Id*. ¶¶ 41-45.)  Pelletier posted bond on September 9, 2008 and was released from detention.  (*Id*. ¶ 47.)  Removal proceedings against Pelletier are ongoing, and his next hearing is set for May 15, 2014.  (ECF No. 117-2.)

After his removal proceedings commenced, Pelletier and his attorney requested a record of Pelletier's most recent entry to the United States, pursuant to 8 C.F.R. § 101.2 and the Customs and Border Protection ("CBP") Inspector's Field Manual § 15.12.  (SAC ¶ 50.)  Their request was denied.  (*Id*.)  They subsequently made a Freedom of Information Act ("FOIA") request for records of Pelletier's inspection and admission, including records of his entry in June 2006.  Pelletier received a response to his FOIA request on May 23, 2011 which had no record of any I-94 issued to him in 2006.  (*Id*. ¶¶ 29, 53; ECF No. 117-1 at 3-4.)  Because Pelletier is a Canadian citizen,

3

he is exempted from certain record-keeping requirements, including the requirement that he be issued an I-94 upon entry to the United States. (*See* SAC ¶¶ 59, 64-65.)

Plaintiffs filed their Complaint on May 24, 2011 (ECF No. 1), and an Amended Complaint on September 14, 2011 (ECF No. 54). On October 21, 2011, Defendants filed a Motion to Dismiss for Lack of Jurisdiction pursuant to Rule 12(b)(1). (ECF No. 62.) On March 28, 2012, the Court denied the Motion, but pursuant to Rule 8(a) the Court dismissed without prejudice all of Plaintiffs' claims except two, as follows:

> (1) Plaintiffs' claim that three provisions in the United States Customs and Border Protection Inspector's Field Manual ("IFM")—Sections 15.1, 15.12, and 21.7—as well as 8 C.F.R. § 235.1(h) (collectively the "Regulations") were "promulgated and executed in violation of the . . . Administrative Procedures Act" (the "APA Claim") (Am. Compl. ¶¶ 181, 187-88, & 194); and (2) that these provisions violate Pelletier's equal protection and due process rights (the "Constitutional Claim") (*Id.* ¶¶ 184 & 187).

(ECF No. 68 at 6.) The Court granted Plaintiffs leave to file a Second Amended Complaint ("SAC") to restate their claims in accordance with Rule 8(a). (*Id.* at 7.)

Plaintiffs filed their SAC on April 27, 2012 (ECF No. 75), in response to which Defendants filed a Motion to Strike and partial Motion to Dismiss the Amended Complaint (ECF No. 84). On February 4, 2013, the Court denied Defendants' Motion to Strike, but granted Defendants' partial Motion to Dismiss, dismissing all of Plaintiffs' claims except the APA Claim and Constitutional Claim previously identified in the March 28, 2012 Order. (ECF No. 110 at 12.)

On April 12, 2013, the parties filed the instant cross-Motions for Summary Judgment. (ECF Nos. 117 & 118.) Defendants filed a Response to Plaintiffs' Motion on

May 13, 2013.  (ECF No. 122.)  Plaintiffs did not file a Reply, nor did they file a

Response to Defendants' Motion.

### III.  ANALYSIS

Defendants' Motion requests summary judgment on both of Plaintiffs' remaining

claims, the APA Claim and the Constitutional Claim, arguing that there are no disputes

of material fact and that both claims fail as a matter of law.  (ECF No. 117.)  Plaintiffs

agree that there are no disputes of material fact, but contend in their Motion that the

regulations and agency manual subsections exempting Canadians from being issued

an I-94 on entry violate the APA, the Equal Protection and Due Process clauses of the

Fifth and Fourteenth Amendments, and the Fourth Amendment.  (ECF No. 119.)  The

Court will discuss each of Plaintiff's claims and the parties' arguments in turn.

### A.     APA Claim

As discussed in the Court's previous Orders, Plaintiffs' APA Claim alleges that

§ 15.1, § 15.12, and § 21.7 of the CBP Inspector's Field Manual ("IFM"), as well as 8

C.F.R. § 235.1(h), were "promulgated and executed in violation of the APA", and asks

the Court to declare them unconstitutional.  (SAC ¶¶ 56-101; *see* ECF No. 68 at 6.)

Under the APA's provision for judicial review, the Court may set aside a final

agency action if it determines that the action is "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A); *see also*

*id.* at §§ 702, 704.

> An action is arbitrary and capricious if "the agency (1)
> entirely failed to consider an important aspect of the

5

—

> problem, (2) offered an explanation for its decision that runs
> counter to the evidence before the agency, or is so
> implausible that it could not be ascribed to a difference in
> view or the product of agency expertise, (3) failed to base its
> decision on consideration of the relevant factors, or (4)
> made a clear error of judgment."

*Hillsdale Envtl. Loss Prevention, Inc. v. U.S. Army Corps of Eng'rs*, 702 F.3d 1156,

1165 (10th Cir. 2012) (quoting *New Mexico ex rel. Richardson v. Bureau of Land

Mgmt.*, 565 F.3d 683, 704-05 (10th Cir. 2009)).  This "standard of review is very

deferential to the agency.  'A presumption of validity attaches to the agency action and

the burden of proof rests with the parties who challenge such action.'"  *Id.* (quoting

*Morris v. U.S. Nuclear Regulatory Comm'n*, 598 F.3d 677, 691 (10th Cir. 2010))

(internal citation omitted).

Similarly, when reviewing challenges to agency procedure, an agency "is entitled

to a measure of discretion in administering its own procedural rules in such a manner

as it deems necessary" to perform its function.  *Am. Farm Lines v. Black Ball Freight

Serv.*, 397 U.S. 532, 538 (1970).  However, "[a]gencies are under an obligation to follow

their own regulations, procedures, and precedents, or provide a rational explanation for

their departure."  *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152,

1165 (10th Cir. 2002).

1.    Inspector's Field Manual §§ 15.1, 15.12, and 21.7

Plaintiffs challenge three IFM chapter subsections, each of which affects the

issuance of entry documents to Canadian citizens crossing the United States border.

*See* IFM §§ 15.1, 15.12, 21.7.  Section 15.1, entitled "General Considerations and

6

Processing Instructions," provides guidance on preparing and processing Form I-94, and specifies that "Form I-94 is not required for . . . [a] Canadian national or other nonimmigrant described in 8 C.F.R. § 212.1(a)[1] or 22 C.F.R. § 41.33[2] admitted as a visitor for pleasure or business or in transit through the U.S."  IFM § 15.1(b)(4)(A). Section 15.12, "Correction of Erroneous Admissions," provides for the creation of a record of a previous admission where no record exists, or to correct an erroneous record.  Finally, Section 21.7, "Use of Form I-94," refers to the § 15.1(b) exemption for Canadians, and discusses the possible use of a multiple-entry Form I-94 for Canadian visitors "to facilitate the inspection process".

Plaintiffs' argument that these provisions of the IFM were "promulgated and executed in violation of the APA" contains two separate contentions: (1) that the CBP failed to follow the APA's rulemaking procedure for regulations in promulgating them; and (2) that the failure to issue an I-94 to Pelletier when he was admitted to the United States violated the APA.  (*See* SAC ¶¶ 56-101.)  The Court agrees with Defendants that neither of these arguments establishes a violation of the APA.

The procedures an agency must undertake depend on whether the proposed rule is legislative or interpretive.  A legislative rule has the force of law and creates new

---

[1] 8 C.F.R. § 212.1(a) defines documentary requirements for nonimmigrants who are citizens of Canada, Bermuda, the Bahamas, or British subjects residing on certain Caribbean islands.

[2] 22 C.F.R. § 41.33 describes the scope of validity of a Canadian border crossing identification card ("BCC").  BCCs have not been issued for Canadian citizens since April 1, 1998.  67 Fed. Reg. 71,443, 71,445 (Dec. 2, 2002).

rights or duties, while an interpretive rule merely clarifies an existing rule and does not

change law, policy, or practice.  *Sorenson Commc'ns, Inc. v. F.C.C.*, 567 F.3d 1215,

1223 (10th Cir. 2009); *Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544, 547

(10th Cir. 1992).  The rulemaking procedure to which Plaintiff refers, requiring a public

notice and comment period, applies only to an agency's proposed "legislative" rule, not

to an "interpretive" rule.  *See Sorenson Commc'ns*, 567 F.3d at 1223 (finding that where

"[t]he declaratory rulings at issue in this case did not create any new duties with respect

to customer data, but merely informed providers of the FCC's interpretation of the

existing regulation. . . , the restriction contained in the declaratory rulings was an

interpretative[3] rule, and the FCC was not required to comply with notice and comment

procedures.").

The IFM is a CBP agency manual that describes implementation guidelines for

agency procedures outlined in statutes and federal regulations; it neither displaces

them nor establishes new regulations.  *See* 8 C.F.R. § 235.1(h) (exempting Canadian

citizens from being issued an I-94); IFM § 15.1(b) (referring to 8 C.F.R. § 235.1 for the

"specific requirements for issuing Form I-94"); *see also* IFM § 1 (specifying that the IFM

does not replace either the Immigration and Nationality Act or the Code of Federal

Regulations applying to immigration policies and procedures).  As an agency manual

---

[3] Tenth Circuit case law uses the terms "interpretive" and "interpretative" interchangeably to refer to this type of rule.  *Compare Sorenson Commc'ns*, 567 F.3d 1222-23 ("interpretative"), *with Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544, 546-47 (10th Cir. 1992) ("interpretive").

that does not change law, policy, or practice, the IFM is not subject to the APA requirement for notice and comment rulemaking procedures. *Rocky Mountain Helicopters*, 971 F.2d at 546-47; *Knutzen v. Eben Ezer Lutheran Housing Ctr.*, 815 F.2d 1343, 1351 (10th Cir. 1987); *Mile High Therapy Ctrs., Inc. v. Bowen*, 735 F. Supp. 984, 986 (D. Colo. 1988) ("Agency manuals, guidelines and memoranda are interpretive rules not subject to the APA."). Plaintiffs' Motion does not contest Defendants' characterization of the IFM as interpretive. Accordingly, the Court finds that the IFM is not subject to notice and comment rulemaking procedures, and its promulgation without such procedures did not violate the APA.

Additionally, the failure to issue an I-94 to Pelletier did not violate the APA because the CBP followed the letter of the regulations and its own procedures in exempting Pelletier, as a Canadian citizen, from the I-94 requirement. IFM § 15.1 directly exempts Canadians from being issued I-94s, an exemption codified in 8 C.F.R. § 235.1(h). In failing to issue an I-94 to Pelletier, and in declining to issue him a later record of his admission pursuant to § 15.12, the CBP followed its own regulations and procedures. Further, given the discretion to which the CBP is entitled in administering its own procedural rules, there is no evidence that the CBP violated the APA when it applied IFM §§ 15.1, 15.12, and 21.7 and did not issue an I-94 to Pelletier upon his entry. Because there is also no evidence that the agency "failed to consider an important aspect of the problem, offered an [implausible] explanation for its decision . . . failed to base its decision on consideration of the relevant factors, or made a clear error

of judgment," the agency's action was not arbitrary and capricious.  *See Hillsdale Envtl. Loss Prevention*, 702 F.3d at 1165.

Thus, Plaintiffs have failed to establish that either the promulgation of the challenged sections of the IFM, or the way in which they were applied to Pelletier, violated the APA.

    2.    <u>8 C.F.R. § 235.1(h)</u>

Plaintiffs also argue in their SAC[4] that 8 C.F.R. § 235.1(h), the regulation exempting Canadian citizens from being issued a Form I-94, was promulgated and applied in violation of the APA.  (SAC ¶¶ 61-66.)  Defendants contend that Plaintiffs' promulgation argument is barred by the statute of limitations, and that Plaintiffs' application argument misreads the regulations.  The Court agrees with Defendants that both of Plaintiffs' APA challenges to § 235.1(h) fail as a matter of law.

"In the absence of a specific statutory limitations period, a civil action against the United States under the APA is subject to the six year limitations period found in 28 U.S.C. § 2401(a)."  *Nagahi v. Immigration & Naturalization Serv.*, 219 F.3d 1166, 1171 (10th Cir. 2000).  This statute provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a) (deferring the accrual date where the claim is brought by a person under legal disability or "beyond the seas").  Insofar as the APA's

---

[4]  Plaintiffs' Motion does not argue this point, appearing to abandon the argument.  (*See* ECF No. 119.)  However, because Defendants' Motion confronts this argument as pleaded in the SAC (*see* ECF No. 117-1 at 13-18), the Court will address it.

judicial review provision acts as a waiver of the government's sovereign immunity, this limitations period limits the scope of that waiver, and consequently limits the jurisdiction of the Court.  *See Ute Distribution Corp. v. U.S. Sec'y of Interior,* 584 F.3d 1275, 1282 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3285 (2010) (suggesting that section 2401(a) is jurisdictional).

Section 235.1(h) was established in its current form in 2006, when its predecessor with identical substantive effect, 8 C.F.R. § 235.1(f), was redesignated. *See* Documents Required for Travelers, 71 Fed. Reg. 68412 (Nov. 24, 2006).  This provision, then codified at § 235.1(f), was initially published in the Federal Register in identical substantive form in 1967, after undergoing a notice and comment period.  *See* 32 Fed. Reg. 9616 (July 4, 1967) (noting prior publication as a proposed rulemaking on May 3, 1967).  Thus, Plaintiffs' challenge to the promulgation of this regulation accrued substantially more than six years prior to the date this action was instituted in 2011.  *See Ute Distribution,* 584 F.3d at 1282 ("A claim against [the] United States first accrues on the date when all events have occurred which fix the liability of the Government and entitle the claimant to institute an action.").  Plaintiffs do not contest this regulatory history, nor do they make any argument for any deferred accrual date.  Accordingly, the Court finds that Plaintiffs' challenge to the promulgation of § 235.1(h) under the APA is barred by the statute of limitations.

Plaintiffs next argue that the CBP's application of § 235.1(h) to Pelletier violated the APA, "because [§ 235.1(h)] only exempts Canadians with Border Crossing Cards

("BCC") from issuance of Form I-94 and Pelletier did not enter with a BCC."  (SAC ¶ 64.)

Plaintiffs' argument misreads § 235.1(h), which exempts from the I-94 requirement not

only individuals possessing a BCC (as defined in 22 C.F.R. § 41.33), but also citizens of

Canada, along with citizens of Bermuda, the Bahamas, or British residents of certain

islands (described in 8 C.F.R. § 235.1(h)(1)(i) as "[a]ny nonimmigrant alien described in

§ 212.1(a) of this chapter").  Pelletier undisputedly falls under the provision in §

212.1(a)(1) for Canadian citizens, which is one of the categories explicitly exempted

from the I-94 requirement in § 235.1(h).  Thus, Plaintiffs' contention that the CBP failed

to follow its own regulations when it exempted Pelletier from the I-94 requirement is

incorrect, and the Court finds no APA violation in the agency's application of § 235.1(h)

to Pelletier.

In sum, because Plaintiffs have presented no evidence establishing any APA

violation with respect to the promulgation or application of IFM §§ 15.1, 15.12, and 21.7,

or 8 C.F.R. § 235.1(h), summary judgment in Defendants' favor is appropriate with

respect to Plaintiffs' APA Claim.

**B.     Constitutional Claim**

Plaintiffs' Constitutional Claim challenges the same regulations and provisions of

the IFM as his APA Claim.  (ECF No. 68 at 6.)  Plaintiffs argue that the classification of

Canadian citizens as exempt from the I-94 requirement violates the Equal Protection

clause, and that the application of these provisions to Pelletier violated the Due Process

clause because, without an I-94, he was unable to prove his lawful admission.  (SAC ¶¶

12

85, 88, 96, 130.)  Though not pleaded in the SAC, Plaintiffs' Motion also makes arguments under the Fourth Amendment, alleging that Pelletier was arrested without probable cause and that the documents being used in his removal proceedings should therefore be suppressed.  (ECF No. 119 at 12-16.)  The Court will discuss each argument in turn.

1.    Equal Protection

Plaintiffs' Equal Protection claim focuses on the classification of Canadian citizens as distinct from individuals of other nationalities, arguing that such a classification merits strict scrutiny because it entails discrimination on the basis of national origin.  (ECF No. 119 at 3-12.)  Defendants contend that rational basis review applies to nationality classifications for immigration purposes, and that a rational basis exists to support the classification.  (ECF No. 117-1 at 19-21.)

While the federal government's exercise of its immigration powers is generally entitled to deference, Plaintiffs are correct that the Supreme Court has held that Equal Protection challenges to state statutes distinguishing between resident aliens and United States citizens who are not state residents are subject to strict scrutiny.  *See Graham v. Richardson*, 403 U.S. 365, 372 (1971); *Mathews v. Diaz*, 426 U.S. 67, 84-87 (1976) (noting that courts should apply "a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization").  However, the classification challenged here is not alienage; rather, Plaintiffs challenge the government's decision to distinguish between aliens from Canada and aliens from other

13

countries in choosing whether to issue them an I-94 upon entry.  "This discrimination among subclassifications of aliens is not based on a suspect classification (such as alienage)."  *Soskin v. Reinertson*, 353 F.3d 1242, 1256 (10th Cir. 2004).  Rather, "[w]hen the federal government classifies aliens on the basis of nationality, the classification must be sustained if it has a rational basis."  *Nademi v. Immigration & Naturalization Serv.*, 679 F.2d 811, 814 (10th Cir. 1982) (quoting *Malek-Marzban v. Immigration & Naturalization Serv.*, 653 F.2d 113, 116 (4th Cir. 1981)).  Accordingly, the Court finds that Plaintiffs' challenged classification is subject to rational basis review.

Under the rational basis standard of review, the Court must determine "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993).  The government "need not actually articulate at any time the purpose or rationale supporting its classification" to be upheld; "[i]nstead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *Id.*

Here, Defendants argue that the I-94 exemption reduces bureaucratic barriers to the high volume of bilateral trade conducted between the United States and Canada and the large numbers of tourists and business visitors regularly crossing this country's northern border.  (ECF No. 117-1 at 19-21.)  This reasoning was articulated by the Senate Committee on the Judiciary when it considered changing documentation requirements for Canadian citizens in 1998.  (*Id.* (citing S. Rep. No. 105-197 (1998)).)

14

Not only have Defendants proposed a "conceivable state of facts", but Congress in fact articulated a rational relationship between the decision to exempt Canadian citizens from the I-94 requirement and the purpose of facilitating international trade and travel with a neighboring country.  *See Heller*, 509 U.S. at 320.  Accordingly, the Court finds that the classification withstands rational basis review.

Nevertheless, Plaintiffs contend that the Court cannot consider any reason articulated by Defendants to support this classification "because they failed to make any initial disclosures pursuant to Fed. R. Civ. P. 26 . . . and the administrative record fails to establish any rational reason for the regulation . . . ."  (ECF No. 119 at 3.)  Without considering Plaintiffs' contention regarding initial disclosures, the Court reiterates that rational basis review requires only that a "conceivable" rational basis for the classification exist, not that the government "actually articulate [it] at any time".  *Heller*, 509 U.S. at 320.  Accordingly, Plaintiffs' argument fails to establish that exempting Canadians from the I-94 requirement constitutes an Equal Protection violation.

Because this classification meets the requirements of rational basis review, summary judgment in favor of Defendants is appropriate with respect to Plaintiffs' Equal Protection claim.

### 2.   Due Process

Plaintiffs next argue that the challenged regulation and provisions of the IFM violate Pelletier's Due Process rights because his inability to prove his lawful entry with an I-94 prevents him from being meaningfully heard.  (SAC ¶¶ 79, 96, 104-110.)

Defendants respond that, given the extremely deferential due process requirements for immigration proceedings, these provisions do not violate the Due Process clause.  (ECF No. 117-1 at 21-22.)

Although procedural due process for aliens in removal proceedings includes "the opportunity to be heard at a meaningful time and in a meaningful manner" and an individualized determination based upon evidence and argument considered by a decisionmaker, the scope of such process is otherwise extremely limited.  *See de la Llana-Castellon v. Immigration & Naturalization Serv.*, 16 F.3d 1093, 1096 (10th Cir. 1994).  "Ordinarily, then, 'whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'"  *Sierra v. Immigration & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)) (noting that an alien unlawfully present in the United States is "legally considered to be detained at the border and hence as never having effected entry into this country").

As a preliminary matter, the Court notes that it has no jurisdiction over the ongoing removal proceedings occurring before the Immigration Judge, as Pelletier's removal is not yet a final agency action of which the APA provides for judicial review.  *See* 5 U.S.C. § 702.  To the extent that Plaintiffs' argument challenges the due process afforded Pelletier in his currently ongoing removal proceeding, such argument is not before the Court.  If he is determined to be removable, Pelletier may appeal the Immigration Judge's decision to the Board of Immigration Appeals, and then to the

16

Tenth Circuit Court of Appeals, and may raise any due process argument before those decisionmakers. *See* 8 C.F.R. §§ 1003.1(b)-(d), 1003.38.

To the extent that Plaintiffs contend that the challenged IFM and regulatory provisions denied Pelletier due process protections because they resulted in the agency's final decision not to issue him an I-94, the Court finds no constitutional violation. As discussed above, the CBP followed its regulations to the letter in exempting Pelletier from the I-94 requirement. At the time Pelletier was denied an I-94, he was not in removal proceedings, and thus was not entitled to the process due to those threatened with deportation. *See de la Llana-Castellon*, 16 F.3d at 1096 (citing *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). Because the CBP followed its own established procedures, those procedures constitute due process for the purposes of an alien denied lawful entry. *See Sierra*, 258 F.3d at 1218.

Furthermore, as Defendants point out in their Response to Plaintiffs' Motion, the challenged provisions only prevent a Canadian citizen from being automatically issued an I-94, and do not prevent an I-94 from being issued upon request. (ECF No. 122 at 20-21.) If Pelletier had requested an I-94 upon entry, he could have been issued one upon payment of an issuance fee of $6.00. *See* IFM § 21.7(a). Additionally, pursuant to 8 C.F.R. § 264.6(b), an alien who was not issued an I-94 may request one from the United States Citizenship and Immigration Services with proof of the alien's lawful admission to the United States. This regulation explicitly contemplates the possibility of proof of lawful admission other than an I-94. Thus, Plaintiffs' contention that the

17

challenged provisions prevented Pelletier from obtaining any such proof ignores the alternative methods for obtaining an I-94 or other proof of lawful entry, and cannot in itself establish a violation of the Due Process clause.

Therefore, the Court finds that Plaintiffs have failed to establish that the challenged provisions violate Due Process, and summary judgment in favor of Defendants is appropriate on Plaintiffs' Due Process claim.

      3.    <u>Fourth Amendment</u>

Finally, Plaintiffs' Motion raises an argument under the Fourth Amendment that Pelletier's apprehension and detention by ICE was a violation of the Fourth Amendment, and that the documents being used in his removal proceedings should therefore be suppressed.  (ECF No. 119 at 12-16.)

Plaintiffs' suppression claim was previously dismissed for lack of jurisdiction under 8 U.S.C. § 1252(g).  (ECF No. 110 at 8-10 (quoting § 1252(g) in depriving courts of jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").)  To the extent that the Fourth Amendment argument in Plaintiffs' Motion duplicates the suppression claim, the Court continues to lack jurisdiction over that claim.

Plaintiffs' other Fourth Amendment argument, that Pelletier was arrested without probable cause, was not pleaded in the SAC.  (*See* SAC ¶¶ 111-119 (containing all references to unlawful arrest under the title "Habeas Review"); ECF No. 110 at 7-8

(dismissing Habeas claim for failure to establish "in custody" element).)  The Court cannot consider a claim that was not properly pleaded, let alone grant summary judgment in Plaintiffs' favor on an issue outside the scope of the complaint.  *See Schneiderman v. United States*, 320 U.S. 118, 159-60 (1943).  Therefore, to the extent that any such claim exists, the Court must deny Plaintiffs' Motion with respect to the Fourth Amendment claim.

In sum, the Court finds that there are no disputes of material fact with respect to any of Plaintiffs' claims, and that Defendants are entitled to judgment as a matter of law.  Accordingly, Defendants' Motion must be granted and Plaintiffs' Motion denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendants' Motion for Summary Judgment (ECF No. 117) is GRANTED;

2.     Plaintiffs' Motion for Summary Judgment (ECF No. 118) is DENIED; and

3.     The Clerk shall enter judgment in favor of Defendants.  Defendants shall have their costs.

Dated this 31st day of December, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

19