**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-01377-WJM-CBS

GLEN PELLETIER,
CARRIE LYNN PELLETIER, and
HOBIE MATTHEW WITT,

      Plaintiffs,

v.

UNITED STATES OF AMERICA,
JOHN LONGSHORE, Field Director, Immigration and Customs Enforcement, Denver
District,
IMMIGRATION AND CUSTOMS ENFORCEMENT, Denver District, and
STEVEN M. BRANCH, Field Office Director, Salt Lake City Field Office,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' THIRD RECONSIDERATION MOTION, DENYING
PLAINTIFFS' MOTION TO AMEND THEIR SUMMARY JUDGMENT RESPONSE, AND
DENYING AS MOOT PLAINTIFFS' MOTION TO ACCEPT UNTIMELY EXHIBIT**

---

      Before this Court is Defendants' Motion for Summary Judgment.  (ECF No. 141.)

The Court will refer to all Defendants collectively as "the Government."

      Also before the Court is Plaintiffs' "Second Motion to Reconsider the Order

Denying Plaintiffs' Motion to Reconsider the Order Granting Summary Judgment to

Defendants and Denying Summary Judgment for Plaintiffs."  (ECF No. 152.)  The Court

will refer to all Plaintiffs collectively as "Pelletier."  Pelletier's "Second Motion to

Reconsider . . .", despite its title, is actually his third motion to reconsider this Court's

pre-appeal summary judgment order (ECF No. 123), and will be referred to below as

the Third Reconsideration Motion.

Pelletier's "Motion Pursuant to Rule 15 to Submit Amended Plaintiffs' Response to Defendants' Motion for Summary Judgment" is before this Court.  (ECF No. 154.)

Finally, Pelletier's "Motion to Accept Untimely Submission of Exhibit C to ECF 154-1" (ECF No. 155) is before this Court as well.

For the reasons explained below, the Government's Motion for Summary Judgment is granted and Pelletier's three motions are denied.

## I.  LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001).  An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th

2

Cir. 1987).

**B.   Reconsideration**

In this case, the reconsideration standard is influenced by law-of-the-case questions discussed below at Part V.  Nonetheless, the ensuing narrative convinces the Court of the need to emphasize that, whatever the standard, "the motion to reconsider is not at the disposal of parties who want to rehash old arguments."  *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000) (internal quotation marks omitted).

**C.   "Motion to Amend"**

Pelletier presents his motion to amend his summary judgment response under Federal Rule of Civil Procedure 15(c)(1)(B), which addresses relation back of amended pleadings.  (*See* ECF No. 154 at 1.)  That Rule has nothing to do with whether Pelletier may supplement his summary judgment response.  As will be shown below, Pelletier is simply attempting to shore up his summary judgment arguments many weeks after they were originally due.  In effect, then, Pelletier's is seeking relief under Federal Rule of Civil Procedure 6(b), which permits this Court to extend a filing deadline "for good cause" upon showing "excusable neglect."

## II.  FACTS

The operative facts in this case have been essentially undisputed from the beginning.  Unless otherwise noted, the following narrative is undisputed and drawn from this Court's prior summary judgment order.  (*See* ECF No. 123 at 3–5.)

Pelletier is a citizen of Canada.  He is married to Plaintiff Carrie Lynn Pelletier, a

United States Citizen.  Plaintiff Hobie Matthew Witt, also a United States Citizen, is his stepson.  Pelletier has been lawfully admitted to the United States as a B-2 visitor numerous times, and he alleges that his most recent lawful admission occurred in June 2006.  Pelletier further alleges that he was not issued a Form I-94 Arrival-Departure Record at that time, and that he did not observe the admitting officer creating any record of his inspection or admission.

For reasons that are not clear in the record, immigration enforcement agents "encountered" and "detained" Pelletier on August 28, 2008, in Great Falls, Montana. (ECF No. 141-1 at 3, ¶ 3.)  The following day, he was issued a Form I-213 and Form I-862 Notice to Appear charging him as a removable person based on his entry without inspection.  Pelletier posted bond on September 9, 2008 and was released from detention.

Removal proceedings against Pelletier have been ongoing since that date, although nothing of substance has happened.  Rather, Pelletier has appeared at several Immigration Court master calendar hearings, each of which pushed his removal hearing date further into the future.  (*Id.* at 4, ¶¶ 9–10.)  His next scheduled hearing is more than four years away (November 29, 2019) in Denver, Colorado.  (*Id.* ¶ 10.)

After his removal proceedings commenced, Pelletier and his attorney requested a record of Pelletier's most recent entry to the United States.  Their request was denied. They subsequently made a Freedom of Information Act ("FOIA") request for records of Pelletier's inspection and admission, including records of his entry in June 2006. Pelletier received a response to his FOIA request on May 23, 2011, which had no record of any I-94 issued to him in 2006.

### III.  PROCEDURAL HISTORY THROUGH THE APPEAL

**A.      Original Complaint & TRO Hearing**

On May 24, 2011, Pelletier filed a 19-page "Emergency Complaint for

Declaratory, Injunctive and Equitable Relief" ("Original Complaint").  (ECF No. 1.)

Pelletier was scheduled to attend an Immigration Court hearing the next day where he

feared that the Immigration Judge would order him removed.  (*Id.* ¶ 11.)  Pelletier

therefore sought, among other things, "judicial review over the constitutionality and

lawfulness of the failure of [the Government] to issue a document establishing lawful

admission to Canadian citizens, such as an I-94 document, who are lawfully admitted to

the United States as B-2 Visitors."  (*Id.* ¶ 1.)  Although not cited in the Original

Complaint, later developments would make clear that Pelletier was referring here to 8

C.F.R. § 235.1(h)(1)(i) ("§ 235.1(h)(1)(i)"):

> Unless otherwise exempted, each arriving nonimmigrant
> who is admitted to the United States will be issued a Form
> I-94 as evidence of the terms of admission. . . . Form I-94 is
> not required by: * * * Any nonimmigrant alien described in
> § 212.1(a) of this chapter [Canadian citizens and certain
> others] and 22 CFR 41.33 [permanent residents of Canada
> with border crossing cards] who is admitted as a visitor for
> business or pleasure or admitted to proceed in direct transit
> through the United States . . . .

Pelletier was also alluding to portions of §§ 15.1, 15.12, and 21.7 of the United

States Customs and Border Protection Inspector's Field Manual ("IFM"), which instructs

border crossing agents on how to implement § 235.1(h)(1)(i) and certain other

regulations.[1]  For simplicity, the Court will refer to § 235.1(h)(1)(i) and IFM §§ 15.1, 15.12, and 21.7 collectively as the "Regulatory Provisions."

Simultaneous with his complaint, Pelletier filed a motion for a TRO.  (ECF No. 2.) This Court held a hearing the next morning and determined, among other things, that Pelletier faced no threat of irreparable harm because the Immigration Court hearing set for later that day was "very preliminary in nature" and would not result in a removal order.  (ECF No. 8 at 7.)  The Court accordingly denied the TRO.  (*Id.* at 11.)

## B.    First Amended Complaint

On August 23, 2011, Pelletier filed an amended complaint ("First Amended Complaint").  (ECF No. 39.)  In contrast to his 19-page Original Complaint, the First Amended Complaint swelled to 57 pages, mostly through a meandering and somewhat unchronological statement of facts and a lengthy but unfocused preemptive argument against the jurisdictional challenges anticipated from the Government.

The First Amended Complaint culminates (more or less) with the following:

Petitioners assert that the issuance of Forms I-213 and I-862

---

[1] The relevant IFM portions are as follows:

- "A Form I-94 is not required for * * * [a] Canadian national or other nonimmigrant described in 8 CFR 212.1(a) or 22 CFR 41.33 admitted as a visitor for pleasure or business or in transit through the U.S. . . . ."  IFM § 15.1(b)(4)(A).

- "Authority exists in 8 CFR 101.2 to create a record of a previous admission where none exists or to correct an erroneous record, provided the error was not a result of deliberate deception or fraud on the part of the alien."  *Id.* § 15.12(a).

- "Most Mexican and Canadian land border applicants are exempt [from] issuance of a Form I-94 pursuant to the policy described in Chapter 15.1(b)."  *Id.* § 21.7(a).

The IFM may be found at https://shusterman.com/pdf/cbpinspectorsfieldmanual.pdf. Apparently this is the only publicly available version.

[to commence removal proceedings]; [the Immigration Court's] denial of motion for continuance;[2] [the Immigration Court's] denial of motion to terminate [the removal proceedings]; [the Immigration Court's] denial of [a] motion to suppress [the documents justifying his removal proceeding, such as the Forms I-213 and I-862]; and promulgation of 8 C.F.R. § 235.1(h) and the IFM sections cited are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," within the meaning of 5 U.S.C. §706.  Petitioner also asserts that the failure to issue a document establishing lawful admission such as an I-94 document, or maintain records of the admission of Canadian citizens in B-2 status, in conjunction with 8 C.F.R. § 235.1(h), 8 U.S.C.S. §1182(a)(6)(A)(I), 8 U.S.C.S. § 1182(a)(9)(B), 8 C.F.R. § 1240.8(c), 8 C.F.R. § 101.2, 8 C.F.R. § 103.21, 8 C.F.R. §1003.1(d), 8 U.S.C.S. § 1361, 8 U.S.C.S. § 1229a(c)(2)(B), 5 U.S.C. § 552a, 5 U.S.C. § 553, 5 U.S.C. §702 et seq., 5 U.S.C. §706, IFM § 31.1[,] IFM §15.1(b)(4), IFM § 15.12, IFM §21.7, equal protection and due process is unlawful, where United States Citizenship and Immigration Services accepts entry documents or affidavits to establish lawful admission of Canadian citizens seeking adjustment of status.

(*Id.* ¶ 157.)  As will become significant later, one of the statutes cited as a basis for relief is 28 U.S.C. § 2241, the general habeas corpus statute ("§ 2241").  (*Id.* ¶¶ 13, 144.)

## C.   The Second Amended Complaint

On September 14, 2011, Pelletier filed another amended complaint ("Second Amended Complaint").  (ECF No. 54.)  Ostensibly "to correct formatting and typographical errors" (ECF No. 46 at 1), the Second Amended Complaint runs to 59 pages.  Largely, however, it covers the same ground as the First Amended Complaint

---

[2] This appears to refer to an instance in which Pelletier sought and was denied a continuance of his May 25, 2011 hearing.  (*Id.* ¶¶ 6, 49–50.)  Pelletier has not since pursued any serious claim in this regard.

(although in somewhat more detail), and asserts the same theories of liability, including a mention of § 2241 habeas relief.  (*See* ECF No. 54 ¶¶ 14, 168, 181–97.)

The Government moved to dismiss this complaint for lack of subject matter jurisdiction.  (ECF No. 62.)  The Government relied on 8 U.S.C. § 1252(g) ("§ 1252(g)"):

> . . . notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . .

The Government also argued that Pelletier could not satisfy § 2241's requirement that the petitioner be "in custody," *see* 28 U.S.C. § 2241(c)(3), because Pelletier was no longer physically detained, nor did he face any severe restraint on his liberty.  (ECF No. 62 at 9–12.)

In resolving the Government's motion, this Court *sua sponte* raised the question of whether Pelletier's Second Amended Complaint complied with Federal Rule of Civil Procedure 8(a).  (ECF No. 68 at 5.)  Characterizing the Second Amended Complaint as "confusing, repetitive, and disjointed" (*id.*), the Court nonetheless "attempted to parse" the document "to identify any claims over which it might have jurisdiction" (*id.* at 6).  The Court identified what it designated the "APA Claim," meaning the argument that the Regulatory Provisions were promulgated and executed in violation of the Administrative Procedures Act.  (*Id.*)  The Court also identified what it called the "Constitutional Claim," referring to the argument that the Regulatory Provisions violate Pelletier's Fourteenth Amendment rights to equal protection and due process of law.  (*Id.*)  As for the

8

remainder of Pelletier's attempted claims for relief, the Court deemed them

"incomprehensible":

> Though there are a number of factual allegations unrelated
> to the APA Claim and the Constitutional Claim—such as
> those involving the decisions made by the Immigration
> Judge during Pelletier's removal proceedings—the Court
> cannot discern under what statutory provision these claims
> may be brought or what facts would support different
> statutory claims.  Accordingly, on the Court's own motion it
> dismisses all claims other than the APA Claim and the
> Constitutional Claim without prejudice to Plaintiffs filing
> [another] amended complaint that more clearly delineates
> between the causes of action being asserted and specifically
> references the facts supporting such cause of action.

(*Id.* at 6–7.)

As for the Government's § 1252(g) jurisdictional argument, the Court noted that

the Supreme Court has construed § 1252(g) fairly narrowly.  (*Id.* at 7–8.)  The Court

held that it does not extend either to the APA Claim or the Constitutional Claim because

neither claim necessarily flows from the Government's decision to commence removal

proceedings against Pelletier.  (*Id.* at 9.)  The Court therefore denied the Government's

motion.

**D.    The Third Amended Complaint**

Responding to the Court's Rule 8(a) analysis, Pelletier filed his Third Amended

Complaint on April 27, 2012.  (ECF No. 75.)  The Third Amended Complaint—which

remains the operative complaint to this day—names six causes of action:

1.    "APA Review," claiming that the Regulatory Provisions were unlawfully

promulgated or executed, or both (*id.* ¶¶ 56–101);

2.    "Review of Constitutional Questions," alleging numerous due process and

equal protection violations (*e.g.*, failing to provide Forms I-94 to Canadians with B-2 visas but not others violates equal protection; FOIA provides insufficient process; removal proceedings against Canadian B-2 visitors violates due process because Canadian B-2 visitors do not receive Forms I-94 to prove their lawful admission; etc.) (*id.* ¶¶ 102–10);

3.    "Habeas Review," apparently under § 2241(c)(3), arguing—

    a.    Pelletier "was unlawfully arrested . . . and remains unlawfully in custody . . . for habeas purposes pursuant to the terms of his immigration bond, because no warrant of arrest or other authority to arrest him existed . . . when he was arrested,"

    b.    the bond "is a severe restriction of Pelletier's liberty interests because he cannot travel to Canada to visit his family," and

    c.    "Pelletier is required to appear for hearing[s] in the Denver Immigration Court . . . pursuant to the terms of his Immigration Bond" (*id.* ¶¶ 111–19);

4.    "Suppression," asking that the immigration forms justifying his removal (*e.g.*, I-213, I-862) "be suppressed, set aside, and held unlawful in accordance with due process because they are fundamentally unfair and prejudice petitioners' constitutionally protected interest in fair procedures" (*id.* ¶¶ 120–28);

5.    "Declaratory Judgment that applicable regulations and procedures are *ultra vires*," effectively duplicating his claim for APA review (*id.*

¶¶ 129–34); and

6.      "Equitable Estoppel," essentially arguing that it is unconscionable for the
Government to base removal proceedings on the lack of record of a lawful
entry when the government does not issue Forms I-94 to Canadian B-2
visitors (*id.* ¶¶ 135–52).

The Government moved to strike the Third Amended Complaint under Rule 8(a),
or to dismiss it under Rules 12(b)(1) and 12(b)(6).  (ECF No. 84.)  The Government
argued that the Third Amended Complaint continued to fail the Rule 8(a) pleading
standard.  (ECF No. 84-1 at 4–5.)  The Government also argued that this Court lacked
subject matter jurisdiction over, and that Pelletier had otherwise failed to state a claim
for, his Habeas Review, Suppression, Declaratory Judgment, and Equitable Estoppel
causes of action.  (*Id.* at 5–14.)

The Court partially granted this motion.  (ECF No. 110.)  The Court declined to
strike the complaint altogether because the Third Amended Complaint was minimally
sufficient "to give notice to Defendants of the basis of [Pelletier's] arguments," even
though the Third Amended Complaint remained "confusing and, at times, repetitive."
(ECF No. 110 at 6.)  However, as discussed below, the Court granted the
Government's request to dismiss Pelletier's Habeas Review and Suppression claims for
lack of jurisdiction, and Pelletier's Declaratory Judgment and Equitable Estoppel claims
for failure to state a claim.  (*Id.* at 7–11.)

1.      Habeas Analysis

The Court's habeas analysis particularly turned on *Dry v. CFR Court of Indian
Offenses for Choctaw Nation*, 168 F.3d 1207 (10th Cir. 1999).  In *Dry*, three members

11

of the Choctaw tribe filed a § 2241 habeas petition in the Eastern District of Oklahoma,

challenging the jurisdiction of the Choctaw Court of Indian Offenses, which had charged

the petitioners with certain crimes under tribal law.  *Id.* at 1208.  The district court

dismissed the § 2241 petition for lack of jurisdiction, reasoning that the petitioners did

not meet § 2241(c)'s "in custody" requirement because they had been released on their

own recognizance pending trial.  *Id.*  The Tenth Circuit reversed:

> A petitioner must satisfy the "in custody" requirement as a prerequisite to habeas corpus jurisdiction.  A petitioner need not show actual, physical custody to obtain relief.  A petitioner is in custody for purposes of the statute if he or she is subject to "severe restraints on [his or her] individual liberty."  A restraint is severe when it is "not shared by the public generally."
>
> In this case, tribal authorities charged, arraigned, and released Appellants on their own recognizance pending trial.  Although Appellants are ostensibly free to come and go as they please, they remain obligated to appear for trial at the court's discretion.  This is sufficient to meet the "in custody" requirement of the habeas statute.

*Id.* (citations and footnote omitted).

Pelletier argued that he was in substantially the same position as the *Dry*

petitioners, but this Court disagreed:

> While Pelletier must appear at immigration court hearings if he is to continue defending himself against removal proceedings, he is not restrained from leaving the country and returning to Canada at will.  Insofar as Pelletier may not be permitted to return to the United States once he has departed, he would share that restraint with all other foreign nationals lacking permission to enter the country.

(ECF No. 110 at 8 (citation omitted).)  Consequently, the Court determined that Pelletier

was not "in custody" for purposes of § 2241, meaning that the Court lacked subject

12

matter jurisdiction over any § 2241 claim.

    2.    <u>Suppression Analysis</u>

The Government's challenge to Pelletier's Suppression claim once again relied on § 1252(g).  The Government argued that the immigration forms Pelletier hoped to suppress were solely for use in removal proceedings and therefore directly and immediately connected to the Government's decision to commence such proceedings. (ECF No. 84-1 at 9.)  This Court agreed, meaning that § 1252(g) stripped the Court of jurisdiction to hear Pelletier's Suppression claim.  (ECF No. 110 at 9–10.)

    3.    <u>Declaratory Judgment Analysis</u>

The Court dismissed Pelletier's Declaratory Judgment claim as duplicative of his APA Claim.  (*Id.* at 10.)

    4.    <u>Equitable Estoppel Analysis</u>

The Court dismissed Pelletier's Equitable Estoppel claim because Pelletier had failed to plead facts supporting several of the elements of equitable estoppel.  (*Id.* at 11.)

**E.**    **Summary Judgment**

On April 12, 2013, the Government moved for summary judgment on Pelletier's remaining claims, *i.e.*, the APA Claim and the Constitutional Claim.  (ECF Nos. 117 & 117-1.)  Pelletier cross-moved that same day, arguing that the Regulatory Provisions violated his due process and equal protection rights (the Constitutional Claim) and that his lawful admission could be established as a matter of law.  (ECF No. 119.)

Remarkably, Pelletier never responded to the Government's motion.[3]  The Court

nonetheless decided both motions on the merits, often referring back to the Third

Amended Complaint for arguments that Pelletier failed to advance in his summary

judgment briefing.  (*See, e.g.*, ECF No. 123 at 1, 7, 10 n.4.)[4]  The Court granted the

Government's motion in full and denied Pelletier's motion in full, as explained below.

    1.   <u>APA Claim</u>

Pelletier's APA Claim involved several challenges to the Regulatory Provisions,

including challenges directly to IFM §§ 15.1, 15.12, and 21.7, and other challenges

directly to § 235.1(h)(1)(i).

    a.   *IFM §§ 15.1, 15.12, and 21.7*

Pelletier argued that IFM §§ 15.1, 15.12, and 21.7 were promulgated unlawfully

because they were not preceded by a notice-and-comment period.  (ECF No. 75

¶¶ 56–101.)  The Court found, however, that these IFM sections are "interpretive," not

"legislative," and therefore require no notice-and-comment period.  (ECF No. 123 at

7–9.)

Pelletier also argued that the Government violated the APA when failing to issue

him an I-94 at his most recent alleged unlawful entry.  (ECF No. 75 ¶¶ 56–101.)  The

Court rejected this argument, finding that the Regulatory Provisions exempt Canadian

citizens such as Pelletier from the requirement to issue Forms I-94, and the

---

[3] In addition, although the Government responded to Pelletier's motion (ECF No. 122),
Pelletier elected not to file a reply.

[4] This Court's summary judgment order mistakenly refers to the Third Amended
Complaint as the Second Amended Complaint or "SAC."

Government therefore followed its own regulations when it did not issue an I-94 to Pelletier.  (ECF No. 123 at 9–10, 11–12.)

      b.    *§ 235.1(h)(1)(i)*

Although § 235.1(h)(1)(i) is certainly a "legislative" rule subject to notice-and-comment procedures, the Court found that Pelletier's APA challenge to § 235.1(h)(1)(i) was barred by a six-year statute of limitations and that Pelletier had not made any argument for a deferred accrual date.  (ECF No. 123 at 10–11.)

      2.    <u>Constitutional Claim</u>

Pelletier's Constitutional Claim, as advanced in his summary judgment motion, involved an Equal Protection challenge to the Regulatory Provisions and a Fourth Amendment challenge to his arrest in August 2008.  As advanced in his Third Amended Complaint, Pelletier's Constitutional Claim also included a Due Process challenge.

      a.    *Equal Protection*

Pelletier's Equal Protection argument rested on the notion that the Regulatory Provisions impermissibly discriminated based on national origin, *i.e.*, by granting Forms I-94 to individuals from certain countries but not others (such as Canada).  (ECF No. 119 at 3–12.)  This Court held, however, that discrimination between noncitizens of varying nationalities (as opposed to discriminating between citizens and noncitizens generally) is permissible if justified by a rational basis.  (ECF No. 123 at 13–14.)  The Court found a rational basis in Congress's desire to "reduce[] bureaucratic barriers to the high volume of bilateral trade conducted between the United States and Canada and the large numbers of tourists and business visitors regularly crossing this country's northern border."  (*Id.* at 14.)  Consequently, the Court rejected Pelletier's Equal

Protection argument.

         b.     *Due Process*

Pelletier's Due Process challenge essentially argued that the Government's failure to give him an I-94 deprived him of his right to be meaningfully heard in immigration proceedings, or in other words, to offer evidence of his lawful entry. (ECF No. 75 ¶¶ 79, 96, 104–10.) The assumption underlying Pelletier's argument is that an I-94 is essential to proving lawful admission.

The Court found that it had no jurisdiction over evidentiary rulings in Pelletier's ongoing removal proceedings, and therefore could not grant any relief in that regard. (ECF No. 123 at 16–17.) Moreover, the Court noted that Pelletier had an opportunity at his last lawful entry to *request* an I-94, and he could also obtain one after the fact, assuming he could prove lawful admission (which would obviously require evidence other than an I-94). (ECF No. 123 at 17–19.) Thus, the Court found no Due Process violation.

         c.     *Fourth Amendment*

Finally, Pelletier argued that his initial arrest in August 2008 lacked probable cause, violating the Fourth Amendment, and that all "evidence" thereby obtained (meaning the Forms I-213 and I-862 that began his removal proceedings) should be "suppressed" as "fruits of the poisonous tree." (ECF No. 119 at 12–16.)

The Court reiterated its previous holding that § 1252(g) deprived it of jurisdiction to "suppress" the Forms I-213 and I-862. (ECF No. 123 at 18; *see also* Part III.D.2, *supra*.) As for the predicate claim that Pelletier's arrest lacked probable cause, the Court held that the only hint of such a cause of action in the Third Amended Complaint

came in Pelletier's request for "Habeas Review," which the Court had already dismissed for lack of jurisdiction under § 2241.  (ECF No. 123 at 18–19;  *see also* Part III.D.1, *supra*.)  Moreover, in that request, Pelletier made several references to lack of a warrant, but did not invoke the Fourth Amendment.  (ECF No. 75 ¶¶ 111–19.)  Rather, the only cited authority conceivably relevant to probable cause was a citation to 8 C.F.R. § 287.3(b), which establishes procedures for questioning an alien arrested without a warrant on suspicion of being in violation of the immigration laws.  (*See id.* ¶ 113.)  The Court accordingly deemed this Fourth Amendment argument "outside the scope of the complaint," and therefore waived.  (ECF No. 123 at 19.)

## F.    First Reconsideration Motion

This Court entered final judgment against Pelletier on December 31, 2013.  (ECF No. 124.)  On February 25, 2014, Pelletier filed a motion for reconsideration ("First Reconsideration Motion") based on the "mistake" prong of Federal Rule of Civil Procedure 60(b)(1).  (ECF No. 125.)

The main thrust of the First Reconsideration Motion is the "and/or argument," which has come to dominate subsequent proceedings in this case.  The and/or argument relies on the following distinction between § 235.1(h)(1)(i) and IFM § 15.1:

- "Form I-94 is not required by: * * * Any nonimmigrant alien described in § 212.1(a) of this chapter [Canadian citizens and certain others] *and* 22 CFR 41.33 [permanent residents of Canada with border crossing cards] who is admitted as a visitor for business or pleasure or admitted to proceed in direct transit through the United States . . . ."  8 C.F.R.

17

§ 235.1(h)(1)(i) (emphasis added).

• "A Form I-94 is not required for * * * [a] Canadian national or other

nonimmigrant described in 8 CFR 212.1(a) *or* 22 CFR 41.33 admitted as

a visitor for pleasure or business or in transit through the U.S. . . . ." IFM

§ 15.1(b)(4)(A) (emphasis added).

(*See* ECF No. 125 at 1–5.)  Pelletier argued that the "and" in § 235.1(h)(1)(i) means

that only Canadian citizens with border crossing cards (BCCs) are exempt from

receiving I-94's, and IFM § 15.1 was promulgated without authority to the extent it

converted "and" into "or."  (*Id.* at 4.)

While this First Reconsideration Motion was pending, Pelletier filed a notice of

appeal.  (ECF No. 127.)

On June 19, 2014, the Court denied the First Reconsideration Motion.  (ECF No.

133.)  The Court noted that its reading of "and" as "or" was precisely the reading

advanced by the Government in its summary judgment briefing, to which Pelletier never

responded, and that Rule 60(b)(1) is not a vehicle to advance arguments that could

have been previously advanced.  (*Id.* at 3–4.)  Nonetheless addressing the merits, the

Court noted that the word "any" in § 235.1(h)(1)(i) precedes the reference to "§ 212.1(a)

of this chapter and 22 CFR 41.33."  (*Id.* at 3.)  Accordingly, "the two regulatory

provisions listed are not a list of criteria that must be met but rather establish the scope

of exemption as containing 'any nonimmigrant alien described' therein."  (*Id.*)

G.    **The Appeal**

The Tenth Circuit resolved Pelletier's appeal through an unpublished order and

18

judgment on October 21, 2014. *Pelletier v. United States*, 588 F. App'x 784 (10th Cir. 2014).

### 1.    The And/Or Argument

The Tenth Circuit began by noting that Pelletier never filed a separate notice of appeal of this Court's denial of the First Reconsideration Motion, and therefore the Tenth Circuit had no jurisdiction over that denial. *Id.* at 787–88. The court found that this lack of jurisdiction extended to Pelletier's and/or argument (and all other arguments deriving from that argument) because Pelletier had raised that argument for the first time in the First Reconsideration Motion. *Id.* at 788–90.

### 2.    Fourth Amendment

The Tenth Circuit next turned to Pelletier's lack-of-probable-cause challenge to his arrest. The court observed that, as pleaded in the Third Amended Complaint, Pelletier's challenge to the lawfulness of his arrest relied on violations of "certain *statutory* and *regulatory* provisions," not on the Fourth Amendment. *Id.* (emphasis in original). The court "affirm[ed]" this Court's decision to deny the Fourth Amendment claim as waived "because [Pelletier's] citations to the Complaint do not support [his] assertion that [he] pled a Fourth Amendment claim." *Id.*

### 3.    Suppression

The Tenth Circuit then disposed of the Suppression claim. *Id.* at 790–91. Pelletier specifically contested this Court's conclusion that Forms I-213 and I-862 were "solely" for initiating removal proceedings, and therefore fell within § 1252(g)'s jurisdictional bar. (*See* ECF No. 110 at 9–10; *see also* Part III.D.2, *supra*.) Pelletier

argued that Form I-213 "could be used outside of [his] removal proceedings to deny him adjustment of status and other benefits." *Pelletier*, 588 F. App'x at 791. "But," said the Tenth Circuit, "[Pelletier's] opportunity to advance this contention was in response to Defendants' motion to dismiss [the Third Amended Complaint].  Yet [he] did not raise the argument, and the district court did not consider or make any ruling on it." *Id.*  The court therefore "decline[d] to reach [Pelletier's] argument concerning the district court's dismissal of [his] suppression claim, and [it] affirm[ed] the judgment on that claim in [the Government's] favor." *Id.*

    4.   <u>Habeas (§ 2241)</u>

       Finally, the Tenth Circuit addressed this Court's conclusion that Pelletier was not "in custody" for purposes of § 2241(c), and the Court therefore lacked jurisdiction over Pelletier's habeas claim.  (*See* ECF No. 110 at 8.)  As noted above (Part III.D.1, *supra*), this Court's conclusion rested on distinguishing the *Dry* decision.  The Tenth Circuit did not agree with that distinction:

> In attempting to distinguish Mr. Pelletier's circumstances, the district court reasoned that the appellants in *Dry* remained in custody because they "could be ordered to appear for trial *at any time* at the discretion of the court." Aplt. App. at 120–21 (emphasis added).  Defendants likewise suggest our decision in *Dry* was based on the appellants' lack of notice in that case regarding when they would be required to appear.  But the decision says nothing more than that the appellants were "obligated to appear for trial at the court's discretion." *Dry*, 168 F.3d at 1208.  Mr. Pelletier also must appear at immigration hearings scheduled at the discretion of the Immigration Court.  We hold that, under *Dry*, Mr. Pelletier alleged sufficient facts to satisfy the "in custody" requirement in § 2241(c)(3).  We therefore reverse the district court's dismissal of Plaintiffs' habeas application for lack of jurisdiction.

*Pelletier*, 588 F. App'x at 792.

## IV.  PROCEDURAL HISTORY SINCE THE APPEAL

### A.    Status Report on Remand

The Tenth Circuit's remand created a conundrum.  Similar to statutes like

42 U.S.C. § 1983 and 28 U.S.C. § 2201 (declaratory judgment), § 2241 is a *vehicle* for

raising substantive claims, but is not itself a substantive claim.  Thus, § 2241(c)(3)

requires the habeas petitioner to be "in custody *in violation of the Constitution or laws or

treaties of the United States*" (emphasis added).  Naturally, then, the petitioner must

specify the portions of "the Constitution or laws or treaties of the United States" being

violated.

On every substantive claim asserted by Pelletier for violation of the Constitution

or a federal statute or regulation, the Tenth Circuit either dismissed for lack of appellate

jurisdiction or affirmed this Court's judgment in favor of the Government.  As will be

explained *infra* at Part V:

(a)    the dismissals for lack of jurisdiction evince Pelletier's failure to appeal

certain portions of the judgment, rendering those matters at least law of

the case and therefore subject only to narrow and discretionary

reconsideration; and

(b)    the matters explicitly affirmed by the Tenth Circuit now fall under the

mandate rule and cannot be reconsidered by this Court.

Thus, by remanding the § 2241 claim, the Tenth Circuit sent back an empty vehicle—a

procedure for asserting "violation[s] of the Constitution or laws or treaties of the United

States," but without any such alleged violations remaining for adjudication, other than (perhaps) under a discretionary reconsideration standard which would itself come into play *only if* Pelletier moved for reconsideration.

Faced with this puzzling procedural stance, the Court ordered the parties to file a joint status report stating their "belief as to the scope of the habeas claim and what remains at issue before this Court." (ECF No. 137.)  In that status report, the Government expressed its position that, although Pelletier's bond rendered him "in custody" for purposes of § 2241(c)(3), this Court lacks jurisdiction to grant habeas relief. (ECF No. 139 at 1–2.)  Specifically, to the extent Pelletier is seeking some sort of release from his bond, 8 U.S.C. § 1226(e) strips this Court of jurisdiction:

> The Attorney General's discretionary judgment regarding the application of this section [regarding immigration bonds] shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

And, to the extent Pelletier is seeking relief from removal proceedings altogether, § 1252(g) continues to present a barrier because, in the Government's view, this Court would be tampering with a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." (ECF No. 139 at 2.)

Pelletier disagreed with the Government's position and asserted that his "habeas claim includes the suppression issues raised in the prior proceedings, constitutional issues raised in the prior proceedings and Administrative Procedure Act ('APA') issues raised in the prior proceedings." (*Id.*)  In other words, Pelletier treated the Tenth

22

Circuit's remand **as an invitation to reargue his entire case**, this time through the

habeas vehicle.  Pelletier also re-asserted the and/or argument, claiming it is not

subject to law of the case "because it [is] a clear error resulting in manifest injustice."

(*Id.* at 3.)

**B.    The Government's Summary Judgment Motion**

After reviewing the status report, the Court ordered the Government to file a

summary judgment motion on Pelletier's habeas claim "on or before March 20, 2015.

The deadlines for Plaintiffs' Response and the Government's Reply shall be as

prescribed under D.C.COLO.LCivR 7.1(d)."  (ECF No. 140 (emphasis removed).)  As

ordered, the Government filed its motion on March 20, 2015.  (ECF No. 141.)  Pursuant

to D.C.COLO.LCivR 7.1(d), Plaintiff then had 21 days (*i.e.*, until April 10, 2015) to file a

response.  Just as with the Government's pre-appeal summary judgment motion,

Pelletier filed no response.  (*See* Part III.E, *supra*.)

On May 26, 2015—over a month after Pelletier's response deadline passed—the

Court issued an order noting that Pelletier

> did not timely file a response and has not since filed
> anything.  The Court could therefore deem the
> Government's motion confessed.  In the interests of justice,
> however, the Court will not do so at this point.  The
> Government's Motion raises the question of whether
> 8 U.S.C. § 1252(g) trumps this Court's ability to evaluate
> Plaintiff's 28 U.S.C. § 2241 habeas petition, especially in
> light of § 2241's interpretation in *Dry v. CFR Court of Indian
> Offenses for Choctaw Nation*, 168 F.3d 1207 (10th Cir.
> 1999).  The Government addresses this only in a brief
> footnote (ECF No. 141-1 at 7 n.3), which the Court finds
> insufficient given the seriousness of the question, the Tenth
> Circuit's continued reliance on *Dry* in the previous appeal in
> this case, and the fact that the Government apparently could

> have raised its current argument in that appeal but did not.
> Accordingly, no later than **June 10, 2015**, the Government
> shall file a supplemental brief of no more than seven pages,
> excluding the signature block and certificate of service, more
> fully discussing the continuing applicability of 28 U.S.C.
> § 2241 in light of 8 U.S.C. § 1252(g).  In the interests of
> justice, the Court will also allow Plaintiff to file a response
> brief no later than **June 24, 2015**.  If Plaintiff files such a
> brief, the Government may file a reply no later than **July 8,
> 2015**.

(ECF No. 142 (formatting in original).)  The Government filed a supplemental brief on

June 10, 2015, as ordered.  (ECF No. 143.)

## C.    Second Reconsideration Motion

On June 19, 2015, Pelletier filed a "Second Motion to Reconsider the Order

Denying Plaintiffs' Motion to Reconsider the Order Granting Summary Judgment to

Defendants and Denying Summary Judgment for Plaintiffs" ("Second Reconsideration

Motion").  (ECF Nos. 144, 144-1.)  The Second Reconsideration Motion is 16 pages

long and is accompanied by a 67-page "memorandum of law in support."[5]  The bulk of

those pages are spent re-arguing the and/or question (both on its merits and why the

question supposedly survived the appeal), but Pelletier also reprises essentially every

other issue already litigated.

On June 22, 2015, the Court struck the Second Reconsideration Motion with the

following order:

> Before the Court is Plaintiffs' Second Motion for
> Reconsideration.  This motion appears to ask this Court to
> reconsider rulings already affirmed by the Tenth Circuit.  The

---

[5] All page counts are according to this Court's practice standards, which count all pages (including motions filed separately from briefs in support) except for the attorney signature block and certificate of service.  *See* WJM Revised Practice Standards III.C.1, III.E.3, III.E.7.

> motion therefore appears meritless on its face.
> Nonetheless, the Court need not so rule because the motion
> is 16 pages long and accompanied by a 67-page
> "memorandum of law in support." This vastly exceeds the
> undersigned's 15-page limit. *See* WJM Revised Practice
> Standard III.C.1. The motion is therefore **STRICKEN**. In
> addition, Plaintiffs are reminded of their [June] 24, 2015
> deadline to respond to the Government's Motion for
> Summary Judgment and supplemental brief.

(ECF No. 145; *see also* ECF No. 146.)

## D.    Motion to Reconsider Striking the Second Reconsideration Motion

On June 24, 2015—Pelletier's deadline to respond to the Government's

summary judgment motion—Pelletier filed a motion to reconsider this Court's order

striking the Second Reconsideration Motion. (ECF Nos. 147 & 148.) Pelletier asserted

that he had been treated unfairly given that the Government's *pre-appeal* summary

judgment motion had exceeded this Court's page limits by 9 pages and this Court did

not act *sua sponte* to strike that motion. (ECF No. 148 at 1.) Pelletier also claimed that

his counsel "did not have 'actual notice' of the 'actual practice standards,' until the Court

issued [its order striking the Second Reconsideration Motion]." (*Id.* at 2.) Finally,

Pelletier sought an extension of time to respond to the Government's current summary

judgment motion. (*Id.* at 5.)

Later that same day, the Court issued an order denying this motion. (ECF No.

149.) The Court stated that its choice, more than two years ago, not to strike the

Government's previous summary judgment motion for being overlong by 9 pages has

no relevance to whether the Court may fairly strike the Second Reconsideration Motion,

which was overlong by 68 pages. (*Id.* at 1–2.) The Court also rejected Pelletier's

"actual notice" argument: "All counsel are expected to be familiar with the practice standards of all judicial officers in this District just as they are expected to be familiar with the Federal Rules of Civil Procedure and this District's Local Rules. Lack of 'actual notice' is no excuse." (*Id.* at 2.) Finally, as to the request for additional time, the Court noted that Pelletier had received a total of 96 days to prepare his response, including 46 unauthorized days (from his original response deadline to the date of the order resetting his response deadline). (*Id.* at 4.) Thus, no additional time was warranted. (*Id.*)

## E.   Pelletier's Summary Judgment Response

About 8 minutes shy of midnight on June 24, Pelletier finally filed his summary judgment response. (ECF No. 150.) It largely reargues the and/or question. (*See id.* at 14–18.) It also contains a lengthy Statement of Additional Disputed Facts, many of which have no evidentiary support, in violation of Federal Rule of Civil Procedure 56(c)(1)(A) and WJM Revised Practice Standard III.E.6. (*See, e.g.*, *id.* at 4–7.) Most of these unsupported factual assertions appear to be an attempt to develop the Fourth Amendment unlawful arrest argument that this Court and the Tenth Circuit already rejected. (*See id.*)

The Government filed its reply on July 6, 2015. (ECF No. 151.)

## F.   Third Reconsideration Motion

On July 10, 2015, Pelletier filed a "Second Motion to Reconsider the Order Denying Plaintiffs' Motion to Reconsider the Order Granting Summary Judgment to Defendants and Denying Summary Judgment for Plaintiffs" (ECF No. 152), which bears

the same title as his Second Reconsideration Motion but is, in reality, his Third

Reconsideration Motion.  It is, once again, a challenge to most every issue already

litigated.

**G.     Motion to Amend Summary Judgment Response**

On July 15, 2015, Pelletier filed a "Motion Pursuant to Rule 15 to Submit

Amended Plaintiffs' Response to Defendants' Motion for Summary Judgment."  (ECF

No. 154.)  Pelletier's proposed "amendment" adds a lengthy factual assertion (based on

a Government report) regarding immigration enforcement officials' lax behavior at

certain ports of entry (ECF No. 154-2 at 2–4)—perhaps to support a claim that he could

have been lawfully admitted without any record created, although Pelletier does not

actually develop this argument.  Pelletier also seeks to add 25 new "undisputed facts,"

which are mostly quotations from cases and statutes.  (*Id*. at 14–18.)  Finally, Pelletier

adds supposedly additional argument in support of his pre-existing arguments.  (*Id*. at

18–32.)

## V.  ANALYSIS

As best the Court can discern from the Tenth Circuit's remand and the parties'

briefing, the questions to be answered are: (1) whether any substantive theory of relief

remains for adjudication through the habeas vehicle; (2) whether this Court can—and if

so, whether it should—reconsider rulings that Pelletier failed to timely appeal; and

(3) whether this Court has jurisdiction to address the merits at all.  Although subject

matter jurisdiction is usually a threshold inquiry, the Court finds that discussion of the

merits informs the jurisdictional question.  The Court will therefore answer the foregoing

questions in the order presented above.

## A.     Did Any Substantive Claim Survive the Appeal?

"[A]n appellate mandate binds a lower court on remand."  18B Charles Alan

Wright et al., *Federal Practice & Procedure* § 4478.3 (2d ed., Apr. 2015 update).  This

is sometimes referred to as the "mandate rule."  *See id.*

The Tenth Circuit explicitly affirmed this Court's judgment on Pelletier's Fourth

Amendment and Suppression claims.  *Pelletier*, 588 F. App'x at 790–91.  These

matters, accordingly, are within the mandate and are no longer open for

reconsideration.

The and/or argument presents a thornier question.  The Tenth Circuit did not

address this on its merits, but dismissed it for lack of jurisdiction.  Generally, "[l]aw of

the case principles [such as the mandate rule] do not bar a district court from acting

unless an appellate decision has issued on the merits of the claim sought to be

precluded."  *Mitchell v. Maynard*, 80 F.3d 1433, 1448 (10th Cir. 1996) (internal

quotation marks omitted).

That said, a ruling "made at one stage of litigation, unchallenged in a subsequent

appeal when the opportunity to do so existed, becomes the law of the case for future

stages of the same litigation, and the parties are deemed to have waived the right to

challenge that decision at a later time."  *Concrete Works of Colo., Inc. v. City & Cnty. of

Denver*, 321 F.3d 950, 992 (10th Cir. 2003) (internal quotation marks omitted).  Courts

have found this rule "necessary to the orderly conduct of litigation" because it "ensures

that a party which fails to challenge a ruling in a first appeal does not stand better as

28

regards the law of the case than one who had argued and lost." *Id.* at 992–93 (internal

quotation marks omitted).

The Court could find no case directly addressing this precise situation, *i.e.*,

where the appellant raises an issue on appeal but the issue is dismissed for lack of

jurisdiction, as opposed to an appellant who did not raise the issue at all.  However, the

Court can see no reason to distinguish the two scenarios.  If an issue is dismissed for

failure to file a notice of appeal, it would seem to be the functional equivalent of *not*

appealing.  Moreover, the policy justification—ensuring that failing to appeal does not

put the party in a better position than one who appeals and loses—applies equally well

to both scenarios.  Accordingly, the Court finds that the and/or argument became law of

the case when Pelletier failed to properly appeal it.  *Cf. Soc'y of Lloyd's v. Bennett*, 182

F. App'x 840, 845 (10th Cir. 2006) (holding that party in second appeal could not raise

an issue raised for the first time in a Rule 60(b) motion before the first appeal but not

argued in the first appeal).

## B.     Can and Should this Court Reconsider its And/Or Ruling?

"[T]he law of the case doctrine does not implicate a court's jurisdiction."

*Concrete Works*, 321 F.3d at 993.  Thus, law of the case does not preempt

reconsideration of the and/or argument.  Nonetheless,

> a district court's authority to deviate from law of the case is
> circumscribed by three exceptionally narrow exceptions:
>
> (1) when the evidence in a subsequent trial is
> substantially different; (2) when controlling authority has
> subsequently made a contrary decision of the law
> applicable to such issues; or (3) when the decision was
> clearly erroneous and would work a manifest injustice.

*Id.* (internal quotation marks omitted).

Pelletier argues that this Court's resolution of the and/or argument is clearly erroneous and would work a manifest injustice.  (ECF No. 150 at 17.)  The Court disagrees, but, in the rapidly thinning interests of justice, it will once again address this issue on its merits.

To repeat, the relevant language is as follows:

- "Form I-94 is not required by: * * * Any nonimmigrant alien described in § 212.1(a) of this chapter [Canadian citizens and certain others] **and** 22 CFR 41.33 [permanent residents of Canada with BCCs] who is admitted as a visitor for business or pleasure or admitted to proceed in direct transit through the United States . . . ."  8 C.F.R. § 235.1(h)(1)(i) (emphasis added).

- "A Form I-94 is not required for * * * [a] Canadian national or other nonimmigrant described in 8 CFR 212.1(a) **or** 22 CFR 41.33 admitted as a visitor for pleasure or business or in transit through the U.S. . . . ."  IFM § 15.1(b)(4)(A) (emphasis added).

Pelletier asserts that § 235.1(h)(1)(i)'s "and" must be read in its typical conjunctive sense, and interprets § 235.1(h)(1)(i) to mean that only Canadian citizens with BCCs are exempt from receiving an I-94.  (ECF No. 150 at 15.)  Pelletier overlooks the actual language of the two cited regulatory provisions.

A "nonimmigrant alien described in § 212.1(a) of this chapter" is (i) a citizen of Canada or Bermuda, (ii) a Bahamian national, or (iii) a British subject resident in the

Bahamas, the Cayman Islands, or the Turks and Caicos Islands.  8 C.F.R. § 212.1(a).

A "nonimmigrant alien described in . . . 22 CFR 41.33" is "a permanent resident of

Canada."  22 C.F.R. § 41.33(a).  Obviously a Canadian permanent resident is not a

Canadian citizen, nor is a Canadian permanent resident a British subject resident in the

Bahamas, the Cayman Islands, or the Turks and Caicos Islands.  Thus, the only

individuals that would fall under both 8 C.F.R. § 212.1(a) and 22 C.F.R. § 41.33 are

Bermudian citizens and Bahamian nationals that are also Canadian permanent

residents.

The Court feels comfortable in assuming that this would be an extremely small

subset of individuals and plainly not what the Government sought to address through

§ 235.1(h)(1)(i).  Rather, § 235.1(h)(1)(i) makes infinitely more sense when interpreted

as encompassing (1) all Canadian citizens and (2) all Canadian permanent residents

who meet the BCC criteria.  (*See* ECF No. 117-1 at 19–21 (discussing the

Government's policy justifications for easing the border crossing process between

Canada and the United States).)  In other words, "[a]ny nonimmigrant alien described in

§ 212.1(a) of this chapter and 22 CFR 41.33" is, in fact, a disjunctive test, referring to

any nonimmigrant alien described in 8 C.F.R. § 212.1(a) and any nonimmigrant alien

described in 22 C.F.R. § 41.33.

Consequently, the Court finds no clear error and therefore cannot depart from

the law of the case on this question.  *Concrete Works*, 321 F.3d at 993.

**C.   Does This Court Have Any Jurisdiction Over the Merits?**

To the extent Pelletier raises any other issue, the Court finds that it lacks subject

31

matter jurisdiction, for the reasons explained below.[6]

       1.      8 U.S.C. § 1226(e)

As noted above (Part IV.A), 8 U.S.C. § 1226(e) strips this Court of to review the Government's decisions with respect to Pelletier's bond.  Therefore, to the extent Pelletier seeks modification of his bond conditions, this Court cannot reach those arguments.

       2.      8 U.S.C. § 1252(g)

To repeat § 1252(g):

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

The Government argues that this statute precludes jurisdiction over any habeas claim based on Pelletier's Suppression theory.  (ECF No. 141-1 at 6–9.)  The Court agrees.  The Court previously held as much (*see* Part III.D.2, *supra*) and the Tenth Circuit affirmed (*see* Part III.G.3, *supra*).  Thus, the Court finds the Government's position both correct on the merits and required by the mandate rule.

---

[6] To the extent this Court lacks jurisdiction even to address the and/or argument, this Part states the Court's alternate holding.  The Court further notes that the Government could have avoided this entire remand if it had raised these jurisdictional arguments before the appeal, or even on appeal, rather than relying solely on the definition of "in custody" under § 2241(c)(3).  *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 784 (10th Cir. 2013) ("a party may challenge subject matter jurisdiction at any time").

3.      8 U.S.C. § 1252(b)(9)

Finally, the Government points to 8 U.S.C. § 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

(*See* ECF No. 143 at 6.)  The Supreme Court has contrasted this provision with

§ 1252(g), characterizing § 1252(g) as narrow and § 1252(b)(9) as broad.  *See Reno v.*

*Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482–83 (1999).  And indeed it is

broad—broad enough to encompass every issue Pelletier has attempted to raise here

and channel it through his removal proceedings and eventually to the Court of Appeals.

*See* 8 U.S.C. § 1252(a)(5) (requiring judicial review of final orders of removal to be had

in the Court of Appeals); *see also Aguilar v. U.S. Immigration & Customs Enforcement*

*Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007) ("In enacting section

1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal

nature of the review process that previously had held sway in regard to removal

proceedings.").  Pelletier does not argue otherwise; he does not address this statute at

all.

The Tenth Circuit has suggested that § 1252(b)(9) does not apply when an alien

challenges his or her detention independently of his or her removal.  *Ochieng v.*

*Mukasey*, 520 F.3d 1110, 1115 (10th Cir. 2008).  That situation does not apply here.

Thus, the Court finds that § 1252(b)(9) strips it of jurisdiction to hear whatever

substantive claims, if any, Pelletier may still have.

### VI.  "MOTION TO AMEND"

As already discussed (Part I.C, *supra*), Pelletier's "Motion Pursuant to Rule 15 to

Submit Amended Plaintiffs' Response to Defendants' Motion for Summary Judgment"

(ECF No. 154) requires a showing of "good cause" and "excusable neglect."  *See* Fed.

R. Civ. P. 6(b).  Pelletier has not attempted to make any such showing, nor is there any

good cause or excusable neglect evident in the record.  Moreover, the materials

Pelletier seeks to insert into his summary judgment response do not shed any

additional light on the questions resolved above.  This motion is therefore denied, and

Pelletier's "Motion to Accept Untimely Submission of Exhibit C to ECF 154-1" (ECF No.

155) is consequently denied as moot.

### VII.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.     The Government's Motion for Summary Judgment (ECF No. 141) is GRANTED.

2.     Pelletier's Second Motion to Reconsider the Order Denying Plaintiffs' Motion to
       Reconsider the Order Granting Summary Judgment to Defendants and Denying
       Summary Judgment for Plaintiffs  (ECF No. 152) is DENIED;

3.     Pelletier's Motion Pursuant to Rule 15 to Submit Amended Plaintiffs' Response
       to Defendants' Motion for Summary Judgment (ECF No. 154) is DENIED;

4.     Pelletier's Motion to Accept Untimely Submission of Exhibit C to ECF 154-1

(ECF No. 155) is DENIED AS MOOT;

5.      The Clerk shall enter final judgment in accordance with this order and shall

terminate the case; and

6.      The parties shall bear their own costs.


Dated this 17th day of July, 2015.

                                        BY THE COURT:



                                        _____
                                        William J. Martinez
                                        United States District Judge